# FERGUSON
*v.*
# THE WASHINGTON AND GEORGETOWN RAILROAD CO.

---

PLEADING AND PRACTICE ; ADMINISTRATION; HUSBAND AND WIFE; DEATH BY WRONGFUL ACT.

1. The plea of *ne unques administrator* is a plea in bar and not in abatement.
2. The right of a husband, given by the Maryland Testamentary Act of 1798, ch. 101, sub-ch. 5, sec. 8, to sue for choses in action of his wife without taking out letters of administration, is a special statutory power and does not extend by construction to any case other than that expressly declared by the statute.
3. A husband cannot by virtue of that act and without taking out letters of administration, describe himself as administrator of his wife and maintain an action to recover damages for her death,

under the act of Congress of February 17, 1885 (23 Stat. 307); allowing the recovery of damages by the personal representative of one killed by the wrongful act of another.

No. 453.   Submitted June 3, 1895.   Decided June 17, 1895.

HEARING on an appeal by the plaintiff from a judgment on demurrer in an action to recover damages for death by alleged wrongful act.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. James Lowndes* and *Mr. Ward Thoron* for the appellant :

This act of February 17, 1885, under which this action is brought, creates a new right which did not exist at common law, *i. e.,* the right to bring an action for damages for the death of a deceased person.   The act vests this right in the family of the deceased.   It is not made " assets."   At the same time a peculiar machinery is provided for the enforcement of the act.   Instead of the right of action being vested directly in the persons in whom the right is vested, it is vested in the personal representative of the deceased person, who is to bring the action, and in that respect to act as trustee of the persons in whom the right is vested.

The principal controversy in this case turns upon the meaning of the words " personal representative of such deceased person," and it is submitted on behalf of the plaintiff that they can mean only the person in whom the rights of personal property of the deceased in this case vested on her death intestate, *i. e.,* her husband.   The word " representative " is a generic word, and is used in connection with the rights of persons to designate the person who, by force of law, succeeds to the rights of a deceased person.   A "personal representative" is one who succeeds to the rights of a decedent in personal property, as contra-distinguished from realty.   *Lee* v. *Dill,* 39 Barb. 5 ; *Card* v. *Card,* 39 N. Y. 323.

Under our system of jurisprudence the personal represent-
ative of a deceased person is usually an executor or admin-
istrator.    This meaning has been given to these words in
numerous cases, but that has been so because in the States
in which the decisions have been rendered the executor or
administrator is the only personal representative of the de-
ceased.    But, as seen above, the words can not be re-
stricted to the executor or administrator, and they can not
designate executor or administrator in any jurisdiction in
which the law designates a different person as successor to
the rights of the deceased.   *Lee* v. *Dill*, 39 Barb. 521.

In any jurisdiction in which a statute like that under con-
sideration is passed it is necessary to examine the laws in
force in that jurisdiction to discover who is the person in
whom the rights of personal property of the deceased vested
at his or her death, and that person, whatever his designa-
tion or the method by which he is invested with the prop-
erty of the deceased, is the *"personal representative"* of the
deceased within the meaning of the act of February 17,
1885.    By the laws in force in the District of Columbia all
personal rights of a deceased wife dying intestate vest *ipso
facto* on her death in her husband without his taking out
letters of administration.    Act of 1798, chap. 101, sub-
chap. 5, sec. 8, 2 Kilty's Laws of Md.

The language of this act is broad and it vests in the hus-
band all the rights of the wife existing at the time of her
death.    It has been held by the courts of Maryland that
this act vests in the husband even those rights of the wife
in which he has no beneficial interest but in respect of which
he is only a trustee.   *Hatton* v. *Weems*, 12 G. & J. 112.

The operation of the Maryland act of 1798 has not been
affected by the " Married Woman's " act of April 10, 1869.
If, then, all the rights of a deceased wife vest *ipso facto* in
the husband on her death, he is the personal representative
of the wife within the meaning of the act of February 17,
1885.

It may very well be argued that the Maryland act of

1798 has taken away the jurisdiction of the Orphans' Court to grant letters of administration to the husband in respect of the property of the wife. It is true that the statute uses the words " it shall not be necessary," but it seems to have been the purpose of the act to supersede the pre-existing method of administration of the wife's assets. It could not have been intended that a husband should occupy the time of the court in performing an act which is entirely unnecessary. This has indeed been so decided by the Orphans' Court of Maryland in a decision quoted in the case of *Hubbard* v. *Barens,* 38 Md. 175.

The suing out of letters of administration by the husband of Mrs. Ferguson in the present case would have been unnecessary and futile, and to insist upon his doing so now when the period of limitation for bringing this suit has expired, may result in the complete loss of their rights by Mrs. Ferguson's next of kin.

*Mr. Enoch Totten* and *Mr. W. H. Dennis* for the appellee :

1. What is the meaning of the words " personal representative " in section 2 of the act of 1885 ? There can be no reasonable doubt on this subject. The words must, in the absence of other controlling words, be taken to mean the person claiming as executor or administrator. *Wyndam's Trusts,* L. R. 1 Eq. Cas. 293 ; *Stockdale* v. *Nicholson,* L. R. 4 Eq. Cas. 367. The term does not include the widow. *Hagen* v. *Keen,* 3 Dillon, 124. Nor the heirs or devisees of land. *Anderson* v. *Austin,* 34 Barb. (N. Y.) 319. Nor does it include an agent. *Jones* v. *Tainter,* 15 Minn. 512 ; *Atkinson* v. *Duffy,* 16 Minn. 45. The executor or administrator represents the deceased as to the personal estate, and hence is denominated the " personal representative." *Card* v. *Card,* 39 N. Y. 317. The Supreme Court of the United States, in considering a similar statute of New Jersey, distinctly held that " personal representative " meant the administrator. *Dennick* v. *Railway Co.,* 103 U. S. 11.

This decision is a leading authority for us in this District on this subject.    *Stewart* v. *Railroad Co., ante,* p. 56.

A surviving husband is not "next of kin" to his wife. *Watt* v. *Watt,* 3 Ves. 244; 1 Williams on Exrs. *243. He is expressly excepted out of the original English statute of distributions, and gets no benefit under chapter 11 of the Maryland act of 1798, which is the statute of distribution in force in this District.    Dennis' Probate Law, D. C. 81. The husband's interests in his wife's estate depends upon the common law.    2 Bl. Com. 515; 2 Kent Com. *136; *Barnes* v. *Underwood,* 47 N. Y. 351, 358.    It is conceded in the present case that the plaintiff has no letters of administration on his wife's estate.    He is, therefore, not entitled in point of fact to describe himself as " administrator ; "and, as shown above, he is not entitled to describe himself as " personal representative," which is a mere pleonasm for the same idea.    This misdescription must in itself be fatal to his case.

2. The Maryland act of 1798 does not aid the case at bar, which is brought under the act of Congress of 1885. This will be apparent from a consideration of the object of sections 8 and 9 of sub-chapter 5, and which should be read as one section.    At common law, the husband became entitled *jure mariti* to his wife's choses in possession, and to her choses in action which he reduced to possession, during his lifetime, either before or after her death.    And even after the death of the surviving husband, any administrator of the wife's estate became trustee for the husband's representatives.    2 Kent Com. *136; *Hubbard* v. *Barcus,* 38 Md. 180.

These consequences seem to have flowed from the doctrine that the identity of the wife was merged in that of the husband, or perhaps the earlier doctrine that the wife herself was like a chattel.    In the eye of the law, before the Married Woman's Acts, a wife dying before her husband did not leave any choses in possession to be administered, and the only question of administration that could arise was in regard to her choses in action.

The husband was fully entitled to all his wife's choses in action, and the letters of administration were merely a formal prerequisite to bringing a suit therefor. *Whitaker* v. *Johnson*, 6 Johns. 112; *Goddard* v. *Johnson*, 14 Pick. 352; *Hart* v. *Stephens*, 6 Q. B. 937. In this, as in other instances, the testamentary code of 1798 aimed to abolish useless formalities. As the surviving husband, as such, was beneficially entitled to all his wife's choses, whether in possession or in action, and was liable for her debts, it was evident that forcing him to take out letters of administration upon them amounted to forcing him to administer through a court upon his own property. Sections 8 and 9 must be read together as one section, bearing upon exactly the same subject-matter; and section 9 shows that the surviving husband is thereby authorized to sue, not as " administrator," for he is expressly relieved from becoming such, but simply in his own name, " either before or after her death." It is safe to assert that a husband suing in Maryland under this act of 1798 no more thought of describing himself as his wife's " administrator " than of describing himself as " surviving partner of the firm," or as " executor *de son tort*." From all the reported cases, it is evident that the surviving husband sued merely in his own name, as for his own property. Section 8, in express terms, contradistinguishes the surviving husband from the " representative " of the wife, and provides that after the husband's death " administration may be granted accordingly " — which seems a very just change, in favor of the wife's next of kin, from the English law before mentioned. *Stockett* v. *Bird*, 18 Md. 484; *Hubbard* v. *Barcus*, 38 Md. 175, 182. There is no " representative " quality about the husband when suing in such a case. He does not represent, properly speaking, either his deceased wife or her next of kin, but is suing in his own right.

Moreover, this statutory provision is limited by its express terms to her (the wife's) choses in action; " which are to " devolve upon her husband." It needs no argu-

ment to show that the claim for damages, under the act of Congress of 1885, is not a chose in action of the deceased person, which " devolves " upon any survivor. It is a new statutory right of the widow (if any) and next of kin, springing into existence only after, and dependent upon, the event of the injured person's death.

3. The surviving husband derives no right whatever under the act of Congress of 1885. That act provides in section 1 that the damages given shall be assessed with reference to the injury resulting " to the widow *and next of kin* of such deceased person." It has been shown hereinbefore that the husband is not "next of kin " to his wife. His right, the *jus mariti*, is directly opposed to that of her next of kin, as is expressly indicated by the Maryland act of 1798, as well as other considerations. Furthermore, section 3 of the same act provides that the damages recovered " shall inure to the benefit of his or her *family*, and be *distributed* according to the provisions of the statutes of distributions in force in the said District."

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an action brought by Thomas B. Ferguson, a surviving husband, describing himself as administrator of his deceased wife, to recover damages for the alleged negligence of the defendant in causing the death of the wife.

The declaration is framed under the act of Congress of February 17, 1885, (23 St. 307, c. 126, sec. 1), by virtue of which the action is sought to be maintained. The act of Congress provides:

" That whenever the death of a person shall be caused by the wrongful act, neglect or default of any person or corporation, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured, or, if the person injured be a married woman, have entitled her husband, either separately or by joining with

the wife, to maintain an action and recover damages, the person who or corporation which would have been liable if death had not ensued, shall be liable to an action for damages for such death, notwithstanding the death of the person injured, even though the death shall have been caused under circumstances which constitute a felony ; *and such damages shall be assessed with reference to the injury resulting from such act, neglect or default causing such death, to the widow and next of kin of such deceased person.* Provided, &c.

"Sec. 2. Every such action shall be brought by and in the name of *the personal representative* of such deceased person, and within one year after the death of the party injured.

"Sec. 3. The damages recovered in such action shall not be appropriated to the payment of the debts or liabilities of such deceased person, but shall inure to the benefit of his or her family, *and be distributed according to the provisions of the Statute of Distributions* in force in said District of Columbia."

To the declaration the defendant pleaded first, that the plaintiff never was the administrator of the deceased wife, and was never the personal representative of said deceased, within the meaning of the act of Congress of February 17, 1885, ch. 126; and, secondly, that the defendant was not guilty of the wrong alleged.

To the first of these pleas the plaintiff demurred, and to the second he joined issue in fact. The demurrer was overruled, and judgment entered for the defendant.

On this state of pleading, the question is, has the surviving husband the right to maintain the action ? The first plea is in bar of the action, and is in substance the plea of *ne unques administrator.* This plea, according to some of the older authorities, has been treated as a plea in abatement simply ; but, according to the best considered cases, and text writers of highest authority, it is a plea in bar of the action. Every plea in abatement must give the plain-

tiff a better writ; but the effect of this plea is, that the plaintiff has no right to sue at all in the character of *administrator*, without letters clothing him with that character, and is therefore a bar to the action.    I Wms. Saund. 275*a*, in notes.

It is conceded that the plaintiff in this case never obtained letters of administration upon the estate of his deceased wife.    It is contended, however, that, as by virtue and operation of the Maryland Testamentary Act of 1798, ch. 101, sub-ch. 5, sec. 8, in force in this District, the surviving husband has a right to sue in respect to all the *choses in action* of the wife, which by law may devolve upon him, without letters of administration granted, he may, therefore, sue and maintain this action as surviving husband, and, in that character, describe himself as admistrator of his deceased wife, and thus bring himself within the descriptive terms of the act of Congress of 1885, giving the right of action to the *personal representative* of the deceased person.    But, clearly, this construction cannot for a moment be maintained.

By the common law, the husband was entitled to all the *choses in. action* of the wife, and if they were not reduced to possession during the life of the wife, and the husband survived the wife and was reduced to the necessity of suing either at law or in equity for their recovery, he was required to administer on the wife's estate and sue in his capacity of administrator.    But, being entitled as husband, he administered simply for his own benefit, for he took the *choses* when recovered, not as distributee or next of kin under the statute of distribution, but as *husband.*    2 Kent. Com. 136. In accordance with this principle, it was declared by the Lord Chancellor in the case of *Watt* v. *Watt,* 3 Ves. 244, 247, that, " The description of next of kin of the wife can in no respect apply to the husband.    He is entitled to the personal possession of the property of his wife *jure mariti ;* her personal property vests in him by the marriage.    At the death of the wife, if ·it is necessary for him to have an ad-

ministration to enable him to get in her personal property, the administration granted to him is granted to him *as husband*; and when we look at the statutes, there is no law that gives the husband a right by force of the statute to administer to his wife. The husband's right is supposed in all the statutes." The same principle is stated as settled law in the subsequent cases of *Anderson* v. *Dawson*, 15 Ves. 532, 536, and *Bailey* v. *Wright*, 18 Ves. 50, 55.

This was the state of the law at the time of the passage of the Maryland Act of 1798, ch. 101 ; and it was for the purpose of obviating and dispensing with the useless formality of requiring the husband to take out letters of administration upon the estate of his deceased wife, that the provision was incorporated in the act that it should not, as theretofore, be necessary for the husband to take out letters of administration, but all the *choses in action* of the wife should devolve upon her husband, in the same manner as if he had taken out such letters. And by the next section of the statute, the husband is clothed with special power to sue and recover in the right of his wife, either before or after her death, by specially setting forth the manner in which the debt or right accrued to the wife, and how the same devolved upon him. This right of the husband to sue in his character of surviving husband, without letters of administration, is a special statutory power, and does not extend by construction to any case other than that expressly declared by the statute. In this case, the alleged cause of action did not accrue in right of the deceased wife ; but it accrued, if it exists at all, by reason of her death, causing loss to the parties entitled to compensation under the statute. The right of action is purely statutory, and the recovery can only be had by the *personal representative* of the deceased person. The personal representative is either the executor or administrator of the deceased. That is the legal and accepted definition of those terms ; and no other person can maintain the action under the statute. Under a statute of similar import, conferring the

right of action upon the personal representative of the deceased, the Supreme Court of the United States, in *Dennick* v. *Railroad Co.*, 103 U. S. 11, held the administrator of the deceased to be the proper party to maintain the action. The act of Congress giving this right of action has followed very closely and substantially the English statute of 9 and 10 Vict. ch. 93, known as Lord Campbell's Act, and by that statute it is in terms  provided, that the action shall be brought by and in the name of the executor or administrator of the person deceased ; while, in the act of Congress of 1885, the descriptive enabling terms are generalized, and the action is required to be brought by and in the name of the personal representative of such deceased person.    The surviving husband, describing himself as administrator, without having obtained letters of administration, has no authority to maintain the action ; he is not interested in the recovery, and he is not, within the sense and meaning of the statute, the personal representative of his deceased wife. It is only in this latter character that he could maintain the action.

The judgment entered for the defendant in the court below must therefore *be affirmed, with costs to the appellee.*

*Judgment affirmed.*