## WESTERN UNION TELEGRAPH COMPANY *v.* LIPSCOMB.*

---

ADMINISTRATION;  DEATH  BY  WRONGFUL  ACT,  ACTION  FOR;  STATUTORY
CONSTRUCTION.

1. Administration is properly granted in this District upon the estate of an intestate who died here as the result of an accident received here,

---

*Appointment of Administrator — Jurisdiction.*— As to what assets, including claim for damages for wrongful death, will give jurisdiction to appoint administrator, see editorial note to *Manning* v. *Leighton,* 24 L. R. A. 684, presenting the authorities on that question.

although he was a non-resident and left no resident next-of-kin and no estate here, except a claim by his personal representative, under the act of Congress of February 17, 1885 (23 Stat. at L. 307, chap. 126), for his alleged negligent killing, and although an administrator appointed in the place of his last domicil might have maintained an action on such a claim under the act of Congress of February 28, 1887 (24 Stat. at L. 431, chap. 281), allowing foreign administrators and executors to sue in this District as if letters had been granted here.

2. That provision of the act of Congress of February 17, 1885 (23 Stat. at L. 307, chap. 126), which provides that the right of action for the negligent killing of one who might have maintained such an action had he survived shall be availed of by and in the name of the "personal representative" of the deceased, must be construed *in pari materia* with the provisions of the pre-existing statute providing for the appointment of an "administrator" to administer the personal estate of a decedent for the benefit of his creditors and distributees, although the first named act excludes the creditors, and directs the recovery, if any, to be distributed to the widow and next of kin.

No. 1281.   Submitted April 14, 1903.   Decided May 19, 1903.

HEARING on an appeal by the petitioners from an order of the Supreme Court of the District of Columbia, sitting as a court of probate, dismissing a petition to vacate an order granting letters of administration.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District of Columbia in special term for probate business, refusing an application to set aside and vacate letters of administration granted to Andrew A. Lipscomb, on the estate of John McMahon, deceased.

It appears that John McMahon, the deceased, died in this District, on the 19th day of March, 1901, intestate, aged about 30 years, and without leaving wife or children. He left surviving him, his father, and several brothers and sisters as his next of kin, all of whom resided out of this District; and the deceased himself was, at the time of his death, a resident of the State of Virginia. He left no personal estate, and owed no debts; but shortly after his death an application was made for letters

of administration by Arthur McMahon, a brother of the deceased, in which application it was stated that the deceased left no personal estate, "but left surviving to his administrator a right of action for the negligent and careless killing of the deceased for the benefit of his next of kin, as provided for by the statute in force in this District in such cases." It is conceded that the deceased died in the District of Columbia, and that he came to his death by an accident occurring in this District, and that he had his residence at the time in Alexandria, State of Virginia. It is also conceded that he left no wife or children, but left surviving him his father, and several brothers and sisters, none of whom resided in this District. The father, and brothers, and sisters all renounced the right to receive letters of administration, and recommended that such letters should be granted to Andrew A. Lipscomb, Esquire, and letters were accordingly granted to him on the 10th day of July, 1901, and he duly qualified as such administrator.

Immediately after obtaining letters of administration the administrator instituted an action in the supreme court of this District against the appellants in this appeal, namely, the Western Union Telegraph Company, the Chesapeake and Potomac Telephone Company, and the District of Columbia, under the act of Congress of February 17, 1885 (23 Stat. at L. 307, chap. 126,) to recover damages from the defendants in the action, for causing, as alleged, the death of the decedent in this District, on March 19, 1901. The defendants appeared to the action, and pleaded to the declaration the general issue plea of not guilty.

After this, the defendants applied to the supreme court of the District in special term for probate business, to vacate the letters of administration granted to Lipscomb, upon the ground that the letters were improvidently issued upon a mistake of fact as to the residence of the decedent at the time of his death, and as to who were his next of kin; that said decedent was a resident of Alexandria, Va., at the time of his death, although he died in the District of Columbia; and that he left no personal or real estate in the District of Columbia; and therefore, it is contended,

the court was without jurisdiction to grant letters of administration here, and that such letters are null and void.

This application was answered by the administrator, and the grounds of it controverted in all respects. The court below, upon hearing, refused to vacate the letters, and from the order denying the application this appeal is taken.

· *Mr. J. Hubley Ashton* and *Mr. Clarence R. Wilson* for the appellant the Western Union Telegraph Company; *Mr. J. J. Darlington* for the appellant the Chesapeake & Potomac Telephone Company; and *Mr. Andrew B. Duvall,* · Corporation Counsel for the appellant the District of Columbia:

1. The act of February 17, 1885, is not a statute of jurisdiction, and conferred no power on the orphans' court to grant the letters of administration in question to the appellee. *Brigg* v. *Walker,* 171 U. S. 471; *Campbell* v. *Porter,* 162 U. S. 478.

Not only is it an established general rule of law that the jurisdiction of an inferior court is never to be presumed, and must be clearly exhibited, but by subchapter 15, section 20, of the Maryland statute of 1798, chapter 101, it is carefully provided that the orphans' court shall not, under the pretext of incidental power or constructive authority, exercise any jurisdiction whatever not expressly given by this act or some other law. This is a continuous provision of the jurisdictional law of the orphans' court, and is referred to by the supreme court in *Kane* v. *Paul,* 14 Pet. 40, as "the stern manner in which that court is confined within its jurisdiction by the statute of 1798." A jurisdiction in an inferior court, at least, will never be created by the mistaken inference or erroneous assumption of the legislature that such a jurisdiction exists. *Herson's Case,* 39 Me. 481. If it were clear, therefore, from the terms of the act of 1885, that Congress actually assumed or supposed, when it passed that act, that the orphan's court then possessed jurisdiction to grant letters of administration on the estate of a nonresident intestate, dying without property in this District, for the purpose of a suit here under the act, the fact could not

create or vest such a jurisdiction in the orphans' court, or warrant the court in exercising it, if by the statute of 1798, it had and has no such jurisdiction. But there is no legal reason to believe or infer that Congress, when it passed the act of 1885, labored under any erroneous impression in regard to the then existing jurisdiction of the orphans' court of the District, or supposed that it was entitled by law to grant administration in such a case as above mentioned, because Congress had already by the act of June 24, 1812, chapter 106 (re-enacted Feb. 28, 1885), authorized an executor or administrator appointed by the proper court of the State or territory of the domicil of the deceased, to bring suit in this District for the cause of action created by the act of 1885, and it must be supposed that within the contemplation of Congress such "personal representative" of a non-resident decedent was the party entitled to sue, and who would sue, here, under that act. In jurisdictions where a statute like our act of 1812 exists, a foreign administrator is entitled to maintain such an action as that authorized by the act of 1885. *Jeffersonville R. Co.* v. *Hendricks,* 26 Ind. 228; *Wabash &c. R. Co.* v. *Shacklett,* 105 Ill. 364; *Kansas P. R'y. Co.* v. *Cutter,* 16 Kan. 568; *Leonard* v. *Columbia, S. N. Co.* 84 N. Y. 48. See also *Dennick* v. *Railroad Co.* 103 U. S. 11, 19, 20; *Stewart* v. *B. & O. R. Co.* 168 U. S. 445, 449; *Perry* v. *St. J. & W. R. Co.* 29 Kan. 299. If there is any deficiency or omission in the statute law in force in this District with regard to the jurisdiction of the orphans' court, or on any other subject, which should properly be supplied, the remedy is with Congress, and not the courts. As well said by the supreme court of Kansas, "instead of requiring the institution of an action in the name of the 'personal representative' of the deceased, where death ensues from the wrong done, the legislature can authorize an action to be maintained in the name of the widow or some of the next of kin of the deceased." *Limekiller* v. *Railroad Co.* 33 Kan. 83, 90. This might very properly be done by Congress, but the courts have no power to amend the act. This has been done in England, by an amendment of Lord Campbell's act (27 & 28 Vic. c. 95, in 1864), which provides that where there is no "personal representative" of the

person whose death has been caused, or if no action is brought by him, within a certain time, all or any of the beneficiaries of the action given by the statute, may sue in their own names.

In England no court of ordinary had the right to grant letters of administration for the purpose of a suit by the administrator under Lord Campbell's act. The statutory jurisdiction of the orphans' court of the District to grant administration in case of intestacy is in fact founded on and limited by the principals regulating the jurisdiction of the ordinary in England, which could only be exercised in respect to chattels or effects belonging to the deceased at the time of his death which had a locality or local situs within the ordinary's province or diocese, and were so locally situated there as that he could dispose of them *"in pios usus."* The contention of appellants is not affected by the decision of this court in *Asphalt Co.* v. *Mackey,* 15 App. D. C. 410; in which the decedent upon whose estate letters of administration were granted for the purpose of bringing suit under the act of 1885, was a resident of the District of Columbia, and the only point contended for by appellants was that, decedent having left no assets, the probate court was without jurisdiction to grant letters.

2. The orphans' court had no jurisdiction by the Maryland statute of 1798, ch. 101, to grant the letters of administration on the estate of McMahon, a nonresident decedent, in question, and they were and are invalid and void under the law of this District. The orphans' court is of a peculiarly special limited jurisdiction, and is confined to the letter of its authority, and the facts necessary to clothe it with jurisdiction must affirmatively appear on the face of its proceedings, and cannot be left as matter of inference or presumption. As said by Chief Justice Marshall, "the statute forbids the judge to exercise any implied powers." 1798, c. 101, subc. 15, § 20 *supra; Yeaton* v. *Lynn,* 5 Pet. 230; *Spencer* v. *Ragan,* 9 Gill. 482; *United States* v. *Walker,* 109 U. S., 258; *Campbell* v. *Porter,* 162 U. S. 478. The only law authorizing the orphans' court to exercise jurisdiction in regard to the granting of letters of administration at

the time the present letters were issued to the appellee, under which the court is forbidden to exercise any implied power, is contained in the Maryland act, 1798, c. 101, subc. 5 § 2. The foundation of this jurisdiction is the existence and presence of "goods, chattels, or personal estate," left by a decedent within the District, and it would seem no less than absurd to designate such a transitory action for tort as that given by the act of 1885, unknown to the law of any English-speaking country at the time of the act of 1798, and created nearly eighty years afterwards, and which cannot operate to increase the volume of a decedent's estate, as "goods, chattels, or personal estate," left by him in the District, within the meaning and contemplation of the act of 1798. *Stewart* v. *B. & O. R. R. Co.* 168 U. S. 445, 449. *Perry* v. *R. R. Co.* 29 Kan. 299 (cited with approval in *Scott* v. *Mc-Neal,* 154 U. S. 43). *R. R. Co.* v. *Swayne,* 26 Ind. 477. *Mallory* v. *R'y.* 53 Kan. 557. As the orphans' court had no jurisdiction to grant these letters, the grant was void *ab initio,* and conferred no power or authority on the appellee to sue the appellants as "the personal representative" of the decedent. *Re Coit,* 3 App. D. C. 246; *King* v. *United States,* 37 Ct. Cl. 529; *Crosby* v. *Leavitt,* 4 Allen, 410; *Grimes* v. *Talbert,* 14 Md. 169; *Thumb* v. *Gresham,* 2 Met. (Ky.) 306; Rorer Intestate Law, 249; 1 Woerner, Administration, 440. *Griffith* v. *Frazier,* 8 Cranch, 28.

3. The orphans' court should have revoked the letters in question as void under the jurisdictional law of the court, upon the facts disclosed to it by this record. The petition of a brother of the deceased, on which the letters were issued, was based upon the jurisdictional averment of the residence of the intestate in the District. It was the duty of the court when the truth of the fact was disclosed to it, and by whomsoever disclosed, to expunge these illegal letters from its records, as improvidently or improperly issued, by mistake of jurisdiction, and void *ab initio.* The legal character and importance of such an averment as to the residence of the deceased in the District is apparent when it is considered as involving a possible adjudication or finding of the alleged fact by the court, when it granted the letters, which

might preclude the appellants from questioning the validity of the letters in a collateral proceeding, under the principles in force in some jurisdictions, and possibly in this District. See *R'y. Co.* v. *Gorman,* 7 App. D. C. 91.

The court below was entitled to be truthfully informed as to the actual relationship of the persons purporting to assent to the petition for letters to the appellee, as the next of kin of the decedent. The interests of the community require that such an *ex parte* application should present the truth and nothing but the truth of the case. *Gross* v. *Howard,* 52 Me. 196. Upon the facts disclosed by the record, the proper remedy of the appellants, under the Maryland authorities above cited, is by application to the orphans' court to vindicate its lawful jurisdiction and purge its records by canceling these letters. *Raborg* v. *Hammond,* 2 Harr. & G. 42; *Fishwick* v. *Sewell,* 4 Harr. & J., 394; *Donohue* v. *Daniel,* 58 Md. 595, 601.

4. The ground upon which the court below dismissed the present petition is untenable. It would have been the right and duty of the court *sua sponte,* as soon as advised of its want of jurisdiction to issue the letters, to set them aside. *R'y. Co.* v. *Swan,* 111 U. S. 379; *County Court* v. *Bissell,* 2 Jones L. 387; *Mallory* v. *R'y.* 53 Kan. 557; *Watson* v. *Glover,* 77 Ala. 323. The theory that as the appellants have no interest in the estate of the decedent, as creditors or legatees (when confessedly there is no estate for anybody to have an interest in), they have no right to question the validity of the letters granted to the appellee, and no interest in their revocation, when they are the only parties in the world affected by the grant of the letters, as issued without authority of law, for the identical purpose for which they have been used against them, under the act of 1885, is quite unintelligible. By the effect of that act, if no other, the appellants have a legal right, based upon a legal interest in the matter of the grant of these letters, to question in this way the legal validity of their grant to the appellee upon the ground that the court had no jurisdiction to appoint him, or to confer any authority upon him, for the object and purposes of the action brought by him against the

appellants. *R'y. Co.* v. *Swayne,* 26 Ind. 477; *Mallory* v. *R'y.* 53 Kan. 557; *Donaldson* v. *Lewis,* 7 Mo. App. 403. The letters directly affect their property, may operate to take away their property, and, if they were issued without authority of law, their operative effect may be to deprive appellants of their property without due process of law, in violation of the Constitution. *Scott* v. *McNeal,* 154 U. S. 34, 44, 46, 50, 51.

5. The letters in question being void *ab initio,* and the grant of the same a mere nullity, appellants had the right to apply when they did for their revocation. *Olmstead's Appeal,* 43 Conn. 110, 113; *Denton* v. *Danbury,* 48 Conn. 368, 372; *Holyoke* v. *Haskins,* 5 Pick. 20.

The appellee, *Mr. Andrew A. Lipscomb,* appeared in proper person.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

It is not shown whether letters of administration could have been obtained in Virginia, where the deceased had his residence at the time of his death, or not. · If such letters had been obtained in that jurisdiction, it would seem clear the administrator could have sued and maintained the action in this District for the alleged wrongful or negligent killing of the deceased here, under the act of Congress of February 28, 1887 (24 Stat. at L. 431, chap. 281), authorizing foreign executors and administrators to sue and maintain actions in this District, as if letters had been granted here. But we think there is no ground for declaring the letters of administration granted to Lipscomb to be null and void for the causes, or any of them, stated by the appellants.

The fact that the deceased had his domicil in Virginia, and that he had no estate here, at the time of his death are not conclusive against the right to obtain letters of administration in this District. There are no negative or prohibitory terms employed in the statute authorizing the grant of letters of administration, that confines the right to the case where it can be

shown that the deceased left personal estate to be administered for the benefit of creditors and distributees.  If there be other legitimate functions to be performed, and which can only be performed, by an administrator, letters of administration may be granted for the purpose, by necessary implication.

The act of Congress of 1885, chap. 126, provides "that whenever, by an injury done or happening within the limits of the District of Columbia, the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured, or, if the person injured be a married woman, have entitled her husband, either separately or by joining the wife, to maintain an action and recover damages, the person who or corporation which would have been liable if death had not ensued shall be liable to an action for damages for such death, notwithstanding the death of the person injured, even though the death shall have been caused under circumstances which constitute a felony; and such damages shall be assessed with reference to the injury resulting from such act, neglect, or default, causing such death, to the widow and next of kin of such deceased person."  *  *  *  "That every such action shall be brought by and in the name of the personal representative of such deceased person, and within one year after the death of the party injured; and that the damages recovered in such action shall not be appropriated to the payment of the debts or liabilities of such deceased person, but shall inure to the benefit of his or her family, and be distributed according to the provisions of the statute of distributions in force in said District of Columbia."

The terms *personal representative of the deceased* mean, of course, administrator or executor constituted according to law, and the statute giving the right of action contemplates that there shall be such personal representative duly appointed to give effect to the statute; or, otherwise, the right would, in certain cases, be simply nugatory for the want of a proper party to institute and prosecute the action.  That provision of the act of 1885, chap. 126, which provides that the right of action shall

be availed of by and in the name of the personal representative of the deceased, though contained in a subsequent statute, must be construed in *pari materia* with the provision in the pre-existing statute providing for the appointment of an administrator to administer the personal estate of the deceased for the benefit of his creditors and his distributees. An administrator appointed under either provision is strictly a representative of the deceased, and it is through the latter that the right devolves upon the administrator, though the act of Congress of 1885 excludes the creditors, and directs the recovery to be distributed to the next of kin of the deceased, according to the provisions of the statute of distributions. There is no substantial reason, therefore, for denying letters of administration in the case where the fund that may be recovered is exclusively distributable to the next of kin of the deceased under the statute, though there be no personal estate of the deceased to be administered under the general law of administration. And the fact that the deceased was not a resident of this District at the time of his death in no manner precluded the right to letters of administration in such case as the present, where the cause of action under the statute has accrued in this District.

This question would seem to have been definitely settled in this jurisdiction by the decision of the supreme court of the District in general term made in the case of *Kent* v. *Pennsylvania R. Co.* 6 Mackey, 335, and the decision of this court in the case of *Washington Asphalt Block & Tile Co.* v. *Mackey,* 15 App. D. C. 411. The facts in those cases were not, in all particulars, the same as in the present case, but the principle upon which those cases were decided clearly negatives the right claimed in this case by the appellants to have the letters of administration granted to the appellee vacated. We perceive nothing in the facts of this case to justify a departure from the principle of the decisions to which we have referred, and we therefore affirm the order appealed from, with costs, and it is so ordered.

*Order affirmed.*