June BURNS, Appellant,

v.

J. Gordon BELL, Appellee.

No. 13662.

District of Columbia Court of Appeals.

Argued Sept. 20, 1979.

Decided Nov. 9, 1979.

Leonard Joseph Keilp, Washington, D. C., with whom Michael M. Ain, Rockville, Md., was on brief, for appellant.

H. Harrison Pledger, Jr., Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

The trial court granted appellee's motion to dismiss concluding that the statute of limitations had run before this action was instituted. Appellant seeks reversal on the ground that there is a genuine issue of material fact as to whether, through the exercise of due diligence, she discovered or should have discovered her injury after January 1974. Because of the existence of this question of fact, appellant contends that the trial court committed error when it decided this question summarily without sending this issue to the jury. We agree and, therefore, we reverse.

The facts, in the light most favorable to appellant, are as follows:

June Burns, appellant, consulted Dr. Gordon Bell, appellee, about her sagging facial skin in August 1968. At that time Ms. Burns inquired about a facelift operation to correct her problems and Dr. Bell agreed to perform the surgery later in the month. After the cosmetic operation was completed, Ms. Burns noticed what she describes as "gross scars." When she brought them to the attention of Dr. Bell, he explained that the scars would shrink in time. Ms. Burns also experienced numbness and a pins-and-needles sensation around the surgical area. When she brought this to Dr. Bell's attention, he indicated that this too would improve in time. Nonetheless, the scars did not improve nor did the numbness subside. Indeed, three months after the operation she began to take aspirin or Excedrin to relieve the pain four times a day four days

a week. She continued to take this medication at least until she filed this action in 1977.

In August 1970, Ms. Burns returned to Dr. Bell for additional facelift surgery to correct the wrinkling of the skin around her eyes. The doctor also agreed to try to make the scars from the previous operation less noticeable. He performed the operation as requested. Throughout this period, she experienced numbness and pain and despite the doctor's corrective work the scars were still noticeable. Several times she asked the doctor and his wife, who was working with her husband, about her condition and each time she was assured that she was progressing satisfactorily and that she would improve. Ms. Burns relied upon these assurances despite her numbness, pain, continuing scars, and need to take pain medication. Her last office visit with Dr. Bell was in 1970. As stated by Ms. Burns in her supplemental answers to interrogatories: [1]

> Throughout this period of time, I had complete trust in Dr. and Mrs. Bell and that if I would only be patient, everything would turn out to be all right. My response in each instance to Dr. and Mrs. Bell's assurances was an acquiescence in their judgment.

In 1974, she referred her friend, Nancy Green, to Dr. Bell for facelift surgery. After seeing the results of her friend's surgery, she concluded that she had not healed properly and that she could no longer rely upon Dr. Bell's assurances. In 1977, she filed this action in Superior Court.

Appellee filed a motion to dismiss claiming that the statute of limitations had run. The trial court treated appellee's motion to dismiss as a motion for summary judgment pursuant to Super.Ct.Civ.R. 12(b) and granted the motion;

> The court concludes that, accepting plaintiff's allegation as true, reasonable men

would not differ in finding that plaintiff Burns reasonably should have discovered, prior to January 14, 1974, that she had been the victim of negligent medical treatment.

Pursuant to D.C.Code 1973, § 12–301(8), an action alleging negligence must be filed within three years of the time when the cause of action arose. Thus, the trial court held, as a matter of law, that appellant's cause of action had accrued more than three years before she filed this lawsuit.

■ In the more commonplace negligence actions, where the fact of injury is readily discernible, the cause of action accrues when the injury occurs. However, closer scrutiny is necessary in instances, as in allegations of medical malpractice, where the injury is not apparent. Federal courts in this jurisdiction have discussed the question on several occasions.[2] The decision in *Burke v. Washington Hospital Center*, 293 F.Supp. 1328 (D.D.C.1968) is illustrative.

Mary Burke was admitted to the Washington Hospital Center and operated on by Dr. Ernest Lowe in June 1962. One of the sponges used during the operation was left inside Mrs. Burke after the operation was completed. The sponge was not discovered until July 1967. The question presented was whether the three-year statute of limitations period had begun when the object was left in the wound or when the patient discovered the object at some later date. The court concluded:

> . . . [T]he statute of limitations begins to run when the patient becomes aware, or should have become aware of what had happened and not at the moment when the surgeon closes the wound with the foreign object abandoned inside. [*Id.* at 1334.]

This is called the foreign objects discovery rule and many jurisdictions have adopted

---

**1.** Supplemental Answers to Interrogatories, No. 7 filed March 27, 1978.

**2.** *Sanders v. United States*, 179 U.S.App.D.C. 272, 551 F.2d 458 (1977); *Jones v. Rogers Memorial Hospital*, 143 U.S.App.D.C. 51, 442 F.2d 773 (1971); *Grigsby v. Sterling Drugs, Inc.*, 428 F.Supp. 242, 243 (D.C.1975), *aff'd*, 177 U.S. App.D.C. 270, 543 F.2d 417 (D.C.Cir.1976); *Burke v. Washington Hospital Center*, 293 F.Supp. 1328 (D.C.C.1968).

it.[3] However, the facts of the instant case do not involve a foreign object negligently left inside of an unwitting patient. Thus, the *Burke, supra*, decision only begins our inquiry because we must now decide whether to extend the application of the discovery rule to all medical malpractice cases or whether to employ an alternative rule to determine when the statute of limitations starts to run in medical malpractice cases that do not involve foreign objects.

In some jurisdictions,[4] such as Virginia, courts apply the time of the act rule to determine when the plaintiff's cause of action accrues in medical malpractice cases. The statute of limitations begins to run at the time of the injury. It does not matter whether the patient has discovered his injury. In *Hawks v. DeHart*, 206 Va. 810, 146 S.E.2d 187 (1966), the Virginia Supreme Court stated:

> We are committed in Virginia to rule that in the personal injury actions the limitation on the right to sue begins to run when the wrong is done and not when the plaintiff discovers that he had been damaged. [*Id.* at 812, 146 S.E.2d at 189.]

Critics of this rule point out that its strict application may bar deserving plaintiffs from relief because plaintiffs often are unaware of their injuries for several years. This lack of awareness is precipitated by the patient's tendency to rely upon the professional skill of his physician. Moreover, many medical injuries do not manifest themselves in a manner recognizable to a layperson for many years. Miraldi, *Ohio Statute of Limitations for Medical Malpractice*, 38 Ohio St.L.J. 125 (1977); *Mal-*

*practice Statute of Limitations in New York: Conflict and Confusion*, 1 Hofstra L.Rev. 267 (1976). We agree with the critics. Balancing the magnitude of the injury to the plaintiff and his interest in relief against the potential prejudice to the defendant and the latter's interest in being free from stale claims, the time of the act rule is inappropriate to apply to medical malpractice actions.

Other jurisdictions[5] such as Ohio use the continuous treatment rule to determine when the cause of action accrues. Under this rule, the statute of limitations begins to run at the termination of the doctor/patient relationship. Although the termination of treatment rule was formulated to avoid the harsh results caused by the application of the time of the act rule, it has also come under attack.

> [I]t affords little relief in cases where the injury is one which requires a long developmental period before becoming dangerous and discoverable. In those situations, the termination rule extends the period of time at which the statute of limitations commences to run, but does so by a factor which bears no logical relationship to the injury incurred. [*Wyler v. Tripi*, 25 Ohio St.2d 164, 267 N.E.2d 419, 421 (1971).]

Even though the termination of treatment rule probably gives plaintiffs a better opportunity to discover their injury and seek relief than the time of the injury rule, both approaches are sometimes unduly harsh in application.

■ The majority of states,[6] including Maryland, employ the discovery rule to de-

**3.** Ariz.Rev.Stat. § 12–564(A), (B), (C), (D); Ga. Code § 3–1101 (Supp.1976); Idaho Code § 5–219(4) (Supp.1971); Mo.Ann.Stat. § 516.105 (1976); N.Y.Civ.Prac.R. § 214–a (1975); Ohio Rev.Code Ann. § 2305.11 (Supp.1978); Utah Code Ann. § 78–14–4 (1953).

**4.** Alaska Stat. § 09.10.070 (1962); Ark.Stat. Ann. § 37–205 (1962); Ind.Code Ann. § 34–4–19–1 (1941); Me.Rev.Stat. tit. 14, § 753 (1964) and *see Clark v. Gulesian*, 429 F.2d 405 (1st Cir. 1970); Mass.Gen.Laws Ann. ch. 260, § 4 (Supp.1974); S.D. Compiled Laws Ann. § 15–

2–14.1 (Supp.1978); Vt.Stat.Ann. tit. 12 § 512 (Supp.1972); Va.Code § 8–24 (1957).

**5.** Minn.Stat.Ann. § 541.07(1) (West 1978), N.Y. Civ.Prac.R. 214–a (1975); Ohio Rev.Code Ann. § 2305.11 (Sup.1978); Wyo.Stat. § 1–19 (1959). Note that New York and Ohio use both the foreign objects discovery rule and the continuous treatment rule.

**6.** Ala.Code tit. 7, § 25(1) (1960); Cal.Civ.Proc. Code, § 340.5 (West Supp.1972); Colo.Rev. Stat.Ann. § 87–1–6 (1964); Conn.Gen.Stat.Ann. § 52–584 (West Supp.1972); Del.Code tit. 18,

cide when a cause of action accrues in a medical malpractice action. Indeed, the federal courts in the District of Columbia use the discovery rule to decide this question in foreign objects/medical negligence cases. *Burke v. Washington Hospital Center, supra.* This rule provides that a plaintiff's cause of action accrues in a medical negligence action when the plaintiff discovers, or reasonably should have discovered his injury. By focusing on discovery as the element which triggers the statute of limitations, the discovery rule gives those injured adequate time to seek relief on the merits without undue prejudice to medical defendants. Miraldi, *Ohio Statute of Limitations for Medical Malpractice, supra.* Predictably, the federal circuit has also extended the discovery rule to apply to all medical malpractice actions regardless of whether they involve a foreign object negligence claim. *Sanders v. United States,* 179 U.S.App.D.C. 272, 551 F.2d 458 (1977); *Jones v. Rogers Memorial Hospital,* 143 U.S. App.D.C. 51, 442 F.2d 773 (1971); *Grigsby v. Sterling Drugs, Inc.,* 428 F.Supp. 242, 243 (D.C.1975), aff'd, 177 U.S.App.D.C. 270, 543 F.2d 417 (D.C.Cir.1976). Facing the recurrent problem of legitimate conflicting interests, it would seem that the judicial effort in this area must be directed towards a fair balance of those interests. Indeed we have already approved of the just and equitable results achieved by a similar approach in legal malpractice cases. *Weisberg v. Williams, Connolly & Califano,* D.C.App., 390 A.2d 992 (1978). In view of the foregoing, we now hold that in all medical malpractice actions, the cause of action accrues when the plaintiff knows or through the exercise of due diligence should have known of the injury.

Applying the discovery rule to the facts of the instant case, we must determine whether a genuine issue of material fact exists as to whether Ms. Burns knew or should have known that she had been injured by the alleged negligence of Dr. Bell.

■ Appellant was operated upon in August 1968 and again in August 1970. After both operations she complained of scars, numbness, and headaches. After both operations she was assured that her condition would improve with time. Her last visit to appellee was in 1970; however, it is proffered that there were other professional contacts beyond that date. Appellee contends that the patient knew of her injury soon after the operation. It is argued that she could see for herself the condition of her face. This approach overlooks the fact that appellant may have relied upon appellee because she herself had no medical expertise and no other accurate way of knowing whether the assurances given her were reasonable. To require a patient to scrutinize to a fine degree the advice given by a treating physician, at the risk of losing his right to legal redress seems unwise. Thus the determination of when appellant should have reasonably discovered her injury under the instant circumstances is, in our view, a question of fact and should have been submitted to the trier of fact. We are supported in this view by a case which is practically congruent to the present one.

In *Fitzpatrick v. Marlowe,* 553 S.W.2d 190 (Tex.Civ.App.1977), a woman appealed from the trial court's order granting summary judgment. She had gone to a physician for treatment of a sinus condition in September 1971. He operated on her and removed a

§ 6856 (1976); Fla.Stat.Ann. § 95.11 (1975); Haw.Rev.Stat. § 657–7.3 (1977); Iowa Code Ann. § 614.1(9) (West 1975); Ky.Stat. § 413.-140 (Supp.1972); La.Rev.Stat.Ann. 9 § 5628 (1977); *Md., Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966); Mich.Comp.Laws Ann. §§ 600.5805, 5838 (Supp.1975); Miss. Code Ann. § 15–1–36 (Supp.1978); Mont.Rev. Codes Ann. § 93–2624 (Supp.1971); Neb.Rev. Stat. § 25–208 (1964); Nev.Rev.Stat. § 11.400 (1971); N.H.Rev.Stat.Ann. § 508:4 (1971); N.J. Stat.Ann. § 2A:14–2 (1952) and *see Moran v.*

*Napolitano,* 71 N.J. 133, 363 A.2d 246 (1976); N.M.Stat.Ann. §§ 23–1–1, 23–1–8, 58–33–13; N.C.Code Ann. §§ 1–15(b), 1–52 (Supp.1977); N.D.Cent.Code § 28–01–18(3); Okl.Stat.Ann. tit. 12 § 95 (1972); Or.Rev.Stat. § 12.110(4) (1971); 42 Pa.Const.Stat.Ann. § 5524(2) (1978); R.I.Gen.Laws § 9–1–14.1 (Supp.1978); S.C. Code § 15–3–545 (Supp.1976); Tenn.Code Ann. § 28–304 (Supp.1978); Tex.Civ.Code Ann. § 5526 and *see Weaver v. Witt,* 561 S.W.2d 792 (Tex.1977); Wash.Rev.Code Ann. § 4.16.350 (Supp.1978); W.Va.Code § 55–2–12(b) (1966).

small bump from her nose in January 1972. After the operation, her nose swelled and the bump remained. Marlowe repeatedly assured her that her condition would improve but it did not. In March 1973, the doctor performed a second operation to correct the first. After this operation, appellant had a dip in her nose instead of a bump. Once again she was assured that her condition would improve in time.

In late 1974, she went to see a plastic surgeon who advised her that she would need corrective surgery. In February 1975, she consulted still another physician who advised her that her nose had been "messed up." Shortly thereafter, appellant filed an action against the original doctor who prevailed at the trial level upon a motion for summary judgment in which he claimed that the statute of limitations had run.

The Court of Civil Appeals of Texas, applying the discovery rule, reversed.

In the case at bar, appellant had no expertise concerning the treatment of her type of injury. She relied on appellee's statements promising future treatment and improvement. She could not be expected to know that appellee's act had created an injury in which she had a cause of action. This was not made known to her until her visit to [the doctor] in 1974. . . . Under the evidence, we deem that whether she should have discovered [her injury] is a fact issue for the trier of fact to determine from the evidence. [*Id.* at 195.]

Thus, we conclude that there were material genuine issues of fact to be resolved and that the trial court erred in granting the motion for summary judgment.

*Reversed and remanded.*