Oneita M. KELTON and Michael Kelton, Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

Oneita M. KELTON et al., Appellants,

v.

Clyde C. FREEMAN, Appellee.

Nos. 12742, 13741.

District of Columbia Court of Appeals.

Argued Feb. 8, 1979.

Decided April 10, 1980.

John H. Gullett, Washington, D. C., for appellants.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed and the case was argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee District of Columbia.

John F. Mahoney, Jr., Washington, D. C., for appellee Freeman.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellants Michael and Oneita Kelton challenge the trial court's dismissal of their actions against Dr. Clyde C. Freeman and the District of Columbia arising from Dr. Freeman's alleged performance of an un-consented-to tubal ligation upon Mrs. Kelton during the Caesarean section delivery of their second child. Finding that no alternative cause of action in negligence was pleaded, we affirm the trial court's dismissal of the suit against Dr. Freeman for failure to meet the one-year statute of limitations for battery. D.C.Code 1973, § 12–301(4).[1] We also affirm the dismissal of the Kelton's suit against the District for failure to meet the six-month notice requirement in the District of Columbia's statutory waiver of sovereign immunity. D.C.Code 1973, § 12–309.[2] The pertinent facts, briefly, follow.

---

1. D.C.Code 1973, § 12–301(4) imposes a one-year time limit "from the time the right to maintain the action accrues . . . for libel, slander, assault, battery, mayhem, wounding, malicious prosecution', false arrest or false imprisonment," *i. e.*, for intentional torts.

2. D.C.Code 1973, § 12–309 provides, in pertinent part:

    An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was

On October 9, 1967, Mrs. Kelton was admitted to D.C. General Hospital. She signed the standard surgical consent forms, but did not authorize a tubal ligation. A child was delivered by Caesarean section by Dr. Freeman.[3] Sometime in 1973, the Keltons decided to try to have a third child. When Mrs. Kelton had not conceived by late 1975, the Keltons sought medical advice. Upon consulting Dr. Richard J. Falk, of Georgetown Medical School, on February 13, 1976, they learned that Mrs. Kelton's Fallopian tubes were not open. On March 22, 1976, she was hospitalized for an exploratory laparoscopy and possible corrective surgery; Dr. Falk discovered two scars on her Fallopian tubes, indicating that a tubal ligation might have been done in the past. He surgically reopened the tubes and, before discharging Mrs. Kelton from the hospital on March 26, informed her that she might have suffered either a deliberate tubal ligation or surgical trauma at some time in the past.

On March 31, 1976, the Keltons requested their medical records from D. C. General. They received them between August 12 and September 14, and were told by Dr. Falk on September 15, that Dr. Freeman was the surgeon, that the consent forms did not cover a tubal ligation and that there were no signs of a medical emergency requiring one.

Formal notice of Mrs. Kelton's claim was sent to the District of Columbia on November 16; it arrived November 18. The action against the District was filed on March 21, 1977; on September 16, that suit was dismissed on a motion for summary judgment. On November 7, 1977, the Keltons' suit against Dr. Freeman was filed; it too was dismissed on summary judgment. This court consolidated the appeals from both dismissals.

Mrs. Kelton argues that her action against the District of Columbia is not barred by the six-month notice requirement of D.C.Code 1973, § 12–309, contending that the period does not begin to run until "the complainant's cause of action has accrued." The language of the statute, however, starts the clock at the moment "the injury or damage was sustained." *Id.* Even defining "injury" broadly, to encompass the discovery rule enunciated in *Burns v. Bell*, D.C.App., 409 A.2d 614, 617 (1979), that "the cause of action accrues when the plaintiff knows or through the exercise of due diligence should have known of the injury," Mrs. Kelton's action is barred.[4] *See Weisberg v. Williams, Connolly & Califano*, D.C. App., 390 A.2d 992, 996 n.8 (1978).

The discovery, sometime before March 26, 1976, that either a deliberate tubal ligation or surgical trauma might have occurred, put Mrs. Kelton on inquiry notice that she might have suffered an actionable injury. Thus, since the six-month statutory period ended, at the latest, on September 26, 1976, Mrs. Kelton's failure to notify the District

---

sustained, the claimant, his agent, or attorney has given notice in writing to the Commissioner of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. . . .

**3.** There was no indication in the operating room records or from any other hospital sources that a tubal ligation was performed. Dr. Freeman's name appeared on the birth certificate.

**4.** We decline to expand the discovery rule any further and reject appellants' proposal that we apply the standard announced by the Fourth Circuit in *Bridgford v. United States*, 550 F.2d 978, 981–82 (4th Cir. 1977), that the clock doesn't begin running "until a claimant has had a reasonable opportunity to discover *all* of the essential elements of a pos-

sible cause of action—duty, breach, causation, damages— . . . ." (emphasis in original) (construing the federal waiver of sovereign immunity statute, 28 U.S.C. § 2401(b) (1976), which bars administrative claims against the United States unless the government is notified "within two years after such claim *accrues*.") (emphasis added).

*See also United States v. Kubrick*, —— U.S. ——, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), which, construing the federal waiver of sovereign immunity statute, approves "the wave of recent decisions" adopting a *Burns*-type standard, *id.* 100 S.Ct. at 358–59, and rejects the conclusion "that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted. . . ." *Id.* 100 S.Ct. at 360.

until late November was untimely. Her action was therefore barred by D.C.Code 1973, § 12–309, and its dismissal by the trial court was proper.

The Keltons' suit against Dr. Freeman is facially more problematic. They contend that they are not barred by the expiration of the one-year statute of limitations for the intentional tort of battery (§ 12–301(4)) because their complaint stated an alternative cause of action in negligence, which enjoys a three-year statute of limitations.

Even assuming that the complaint raised an allegation of negligence,[5] the trial court was not bound by the plaintiffs' characterization of the action. Nor are we. *Morfessis v. Baum*, 108 U.S.App.D.C. 303, 281 F.2d 938 (1960). The court in *Morfessis* looked to the substantive elements of the alleged cause of action and concluded that the complaint stated a case of malicious prosecution, which was barred by the statute of limitations, rather than abuse of process, despite the contrary assertion in the complainant's caption. It said: "The action thus pleaded cannot . . . be removed from its place in the law of torts by calling what occurred also an abuse of process." *Id.* at 305, 281 F.2d at 940. The dissent concluded that abuse of process was alleged.

On considering the elements of the alleged offense, as did the court in *Morfessis* —which we must do from the point of view most favorable to appellants on reviewing an appeal from summary judgment—we fail to discern any cause of action distinct from the tort of battery.

■ Appellants argue that "negligent failure to disclose" either before or after an unconsented-to surgical procedure, is a tort apart from battery. They cite *Canterbury v. Spence*, 150 U.S.App.D.C. 263, 464 F.2d 772, *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972), in support of this proposition. The facts of *Canterbury* are clearly distinguishable: the surgery there was deemed to have been without consent because the doctor allegedly failed to inform the patient adequately of the risks involved; the injury was alleged to have been caused by the occurrence of the very risk about which the doctor allegedly failed to warn; and there was, significantly, an allegation that the surgical procedure itself was negligently performed.

Moreover, in *Canterbury* the court concedes that

No more than breach of any other legal duty does . . . [failure] to disclose alone establish liability to the patient. An unrevealed risk that should have been made known must *materialize*, for otherwise the omission, however unpardonable, is legally without consequence. . . . And, as in malpractice actions generally, there must be a causal relationship between the physician's failure to adequately divulge and *damage to the patient*. [*Id.* at 281, 464 F.2d at 790 (footnotes omitted and emphasis supplied).]

Thus a breach of duty to disclose (lack of consent) is not actionable in negligence unless it induces a patient's uninformed consent to a risky operation from which damages actually result.[6] *See Nishi v. Hart-*

---

5. The caption of appellants' complaint against Dr. Freeman reads: "Assault and Battery— Medical Negligence—Personal Injuries." However, the complaint specifies no negligent act and fails to characterize the duty whose breach might have resulted in negligence liability. The only tortious conduct which is clearly pleaded is assault and battery. The only use of the term "negligence" is in the conclusory assertion of paragraph 12 of the complaint: "As a further proximate consequence of the wrongful and negligent acts of defendant doctor, plaintiff . . . has suffered severe psychic and mental anguish . . . ."

6. Appellants cite *Emmett v. Eastern Dispensary & Casualty Hospital*, 130 U.S.App.D.C. 50, 396 F.2d 931 (1967), in support of their argument that failure to disclose is negligence per se. *Emmett* is totally inapposite: the decedent's relatives sued the hospital for *wrongful death* resulting from negligent *treatment*; the court simply held that the decedent's immediate family had the right to obtain his hospital records, despite the hospital's invocation of a doctor-patient privilege, and despite the fact that the family had not qualified as "legal representatives" of the deceased under D.C.Code 1967, § 14–307(a). *Emmett* also held that the

*well*, 52 Haw. 188, 473 P.2d 116, 118–19 (1970).

■ On the other hand, "[a]n actor is subject to liability . . . for battery, if (a) he acts intending to cause a harmful or offensive [unconsented to] contact with the person of the other . . . and (b) a harmful contact . . . results." 1 Restatement (Second) of Torts § 13 (1965). This, in essence, is what appellants alleged Dr. Freeman did in this case, but the statute of limitations expired on a possible battery action.[7]

We conclude that appellants raised no claim of negligence, and that their only viable cause of action is barred by § 12–301(4), the repose statute for battery. Therefore, the trial court's grant of summary judgment must be affirmed.

*So ordered.*

hospital's fraudulent concealment of a claim may toll the statute of limitations.

7. Appellant offers no theory for recognizing the deliberate concealment of a battery as a new tort; we decline to do so.