Patricia Brogan **DAWSON**, et al., Plaintiffs,

v.

**ELI LILLY AND COMPANY**, et al., Defendants.

Civ. A. No. 81–1288.

United States District Court, District of Columbia.

July 28, 1982.

**9.** It is not disputed that the amount in controversy exceeds $10,000.

Aaron M. Levine, Washington, D.C., for plaintiffs.

James A. Hourihan, Washington, D.C., for Eli Lilly.

Gail S. Marshall, James M. Heffler, Washington, D.C., for Upjohn.

Timothy C. Russell, Washington, D.C., for Merck & Co.

William J. Donnelly, Washington, D.C., for Squibb Corp.

Harold D. Murry, Jr., Barry J. Isreal, Washington, D.C., for Abbott Laboratories.

## ORDER

JOYCE HENS GREEN, District Judge.

Defendants Eli Lilly and Company, Abbott Laboratories, E.R. Squibb & Sons, Inc., and Upjohn Company have moved for summary judgment and to dismiss the complaint on the basis of the statute of limitations. The undisputed facts are as follows. In 1973, when plaintiff was seventeen years old, her mother read an article in the newspaper about diethylstilbestrol (DES) and its effects on the daughters of women who took the drug during pregnancy. She then ascertained from her obstetrician that she had taken DES during her pregnancy with

the plaintiff. That same day, she discussed these matters with her daughter, and about two weeks later, plaintiff was taken to a Dr. Marlow for a gynecological examination. Dr. Marlow diagnosed plaintiff's condition as cervical adenosis. At that time, plaintiff took a pamphlet on DES from a table in the doctor's office. Pltf.'s Deposition at 40–45. Dr. Marlow also told plaintiff at the first visit that there are cases where cancer has developed from taking DES. Pltf.'s Deposition at 90–91. Since that time, plaintiff has continued to visit Dr. Marlow two to four times a year for check-ups related to her adenosis and to determine whether any cancer cells have developed. Deposition at 56–58, 89.

Thus, although the record does not reveal directly that plaintiff was informed that her condition was or might be a result of her mother's ingestion of DES, it is clear from the circumstances surrounding the diagnosis of her adenosis that she was aware at that time of a possible connection between her condition and DES. She was taken to the doctor precisely because her mother had discovered that she had taken DES during her pregnancy with plaintiff, she picked up DES pamphlets in the doctor's office, and the doctor told her that cancer had been known to develop "from taking DES." She was subsequently checked regularly for the possible development of cancer. Plaintiff admits that she knew, as early as 1973, "of the possibility of a causal nexus" between DES and her condition, but states that she was not told of a "clear and certain causal relationship" at that time. Plaintiff's Opposition to Motion for Summary Judgment at 6.

It is agreed that District of Columbia law applies to this question. See *Manatee Cablevision Corp. v. Pierson,* 433 F.Supp. 571 (1977). Until 1978, the age of majority for statute of limitations purposes in the District of Columbia was 21 years of age. Plaintiff turned 21 on December 4, 1976. The statute of limitations for a claim for personal injury based on negligent manufacturing, products liability, breach of warranty and misrepresentation, (Counts I–IV of the Complaint), is three years. D.C.Code

§ 12–301(8). Defendants claim that Count V, intentional infliction of emotional distress, is governed by the one year statute of limitations applied to libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment under D.C.Code § 12–301(4) because it is an intentional tort. Plaintiff does not dispute the limitations periods claimed by defendants, but asserts that she did not discover information essential for the accrual of her claim until November, 1980, which is less than a year before she filed this claim. Defendants argue that since plaintiff knew of both her injury and its connection to DES since before her 21st birthday, the statute began to run on December 4, 1976, and expired for all her claims on December 4, 1979. This case was brought June 5, 1981.

Plaintiff makes two arguments in opposition to defendants' motions. First, she did not know of a "clear and certain causal relationship" between DES and her condition. Defendants' representatives have testified as recently as 1981 in various depositions to the effect that there is no certain relationship between ingestion of DES by pregnant women and adenosis or malformation of the sexual organs of their offspring, or that their companies take no position on the question. Plaintiff argues that if defendants' experts in 1981 did not know of a causal link, it cannot be decided as a matter of law that she should have known of the causal link before June 5, 1978. Secondly, plaintiff argues that District of Columbia law requires not only a knowledge of the injury and its cause, but also knowledge of some wrongful conduct on the part of the defendant, to begin the running of the statute of limitations. Plaintiff has submitted an affidavit to the effect that she was unaware until November, 1980 that at the time of her gestational period, DES was "marketed without adequate testing as to its safety nor efficacy (to prevent abortion) ...". Defendant argues that knowledge of wrongful conduct is not necessary to begin the limitations period.

The parties agree, although they differ as to its requirements, that a "discovery" rule applies to this action under District of Columbia law. That is, the cause of action accrues for limitations purposes not when the injury first occurred, (here, in plaintiff's gestational period), but when plaintiff discovered, or by the exercise of due diligence should have discovered, the facts giving rise to her claim. *Jones v. Rogers Memorial Hospital*, 442 F.2d 773 (D.C.Cir.1971); *Kelton v. District of Columbia*, 413 A.2d 919 (D.C.App.1980); *Burns v. Bell*, 409 A.2d 614 (D.C.App.1979); *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242 (D.D.C.1975), *aff'd without opinion*, 543 F.2d 417 (D.C.Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). Exactly what those facts are has not been precisely defined in the District of Columbia. Rather, each case appears to refer to the elements of the cause of action which were belatedly discovered under the particular circumstances. In *Jones v. Rogers Memorial Hospital*, the court held that the statute of limitations did not begin to run at the time of allegedly negligently performed surgery, but rather when the injury caused by the surgery was discovered. The plaintiff's discovery of the causal relationship between the surgery and the injury, or between the injury and defendant's negligence were not discussed, likely because these facts were evident at the time of the discovery of the injury. *Kelton v. District of Columbia* involved an alleged unconsented tubal ligation performed during a Caesarean section delivery. The court held that the statute began to run at the time plaintiff was told that surgery had revealed scars on the Fallopian tubes indicating that either a deliberate tubal ligation or surgical trauma might have occurred at some time in the past. Again discovery of a causal connection with defendant's conduct, or of a possibility of wrongdoing on the part of the defendant were not discussed. However, the only possibility for a later accrual date that appears to have been raised is the time when plaintiff received her medical records concerning the Caesarean procedure from the hospital, which revealed that her consent forms did not cover a tubal ligation and that there were no signs of medical emergency requiring one. Although the opinion does not state exactly why that later date was rejected, it is logical to assume that the court considered plaintiff's discovery that a surgical procedure she had neither desired nor requested may have been performed was enough to put her on notice that "she might have suffered an actionable injury," 413 A.2d at 921, i.e. that wrongdoing was involved, without the additional information from the hospital records.

Where a plaintiff knew that her injuries were caused by defendant's surgery, but claimed to have believed for several years that they were a natural or usual after-effect of the surgery, the District of Columbia Court of Appeals held that the time of discovery was a jury question. *Burns v. Bell*. Plaintiff in that case experienced numbness and pain and continued to have scars several years after the performance of a facelift operation. Her doctor repeatedly reassured her, however, that she was progressing satisfactorily and would continue to improve. It was not until she saw the results of a similar operation on a friend some five or six years after her initial operation that she concluded that she had not healed properly. The court stated that a jury could find that the statute did not begin to run until that time, because plaintiff, who lacked medical expertise, had no way of knowing whether her doctor's assurances were reasonable. Although the *Burns* court did not phrase it this way, plaintiff already knew of her injuries and their causation but did not know that they were a result of malpractice, i.e. defendant's wrongdoing.

The discovery rule as applied to a drug products liability action was phrased in the following manner in *Grigsby v. Sterling Drug, Inc.*:

The statute of limitations on each of the causes of action begins to run from the time plaintiff learned, or in the exercise of due diligence could have learned, that her injuries were not simply misfor-

tune, but resulted from an undisclosed defect in defendants' product.

428 F.Supp. at 243. Summary judgment based upon the statute of limitations was granted in *Grigsby* despite the fact that "these are issues which must be left to the trier of fact in all but the most exceptional cases," *Id.*, because plaintiff was told in 1968 that her hearing loss was most likely caused by defendant's drug, and as a doctor herself, at that point plaintiff could have, but did not, further explore the technical issues involved. Plaintiff had not discovered any new information since 1968 which enabled her to bring the lawsuit. Discovery of possible negligence on the part of the drug manufacturer was not discussed or alleged to have occurred at a later date than discovery of causation.

■ Plaintiff's first contention, that her knowledge of the possible connection between DES and her injuries was not sufficient to determine as a matter of law that she had discovered the causal relationship more than three years before she brought this suit, does not withstand scrutiny. The court has found no case, in this jurisdiction or elsewhere, which holds that a plaintiff must have clear and certain knowledge of a causal relationship before the statute begins to run. Further, a defendant's continuing denial of the causal relationship has been found to delay the accrual of the cause of action only where the plaintiff claims to have relied on that denial, as where a patient relies upon her doctor's advice or a consumer relies upon a drug manufacturer's representations as to safety. No such claim is made here. In fact, plaintiff does not claim to have received any information that tended to dispute the relationship between DES and her condition at any time. If the statute of limitations did not begin to run merely because a plaintiff who knew of a possible causal relationship and did not rely on any representations to the contrary did not have *certain* knowledge of causation, no claim where causation could be disputed would ever accrue. This is illustrated by the instant case, where under plaintiff's argument, her cause of action has not yet accrued. She does not claim to have yet

discovered certain knowledge of causation, and defendants have stated that they intend to dispute causation at trial. As long as causation is a disputed issue, a plaintiff could claim not to have "certain" knowledge, and the statute would never run. Obviously, this is not the intention of a discovery rule. The record presented supports the conclusion that, as a matter of law, plaintiff discovered the connection between DES and her injuries sometime in 1973, and that the disability of her minority for statute of limitations purposes was removed in 1976, when she reached 21 years of age.

■ The question still remains as to whether plaintiff's claimed ignorance of any wrongdoing on the part of defendants could have prevented the action from accruing until 1980. Defendants characterize this argument as a requirement that plaintiff have knowledge of the *legal* significance of defendants' actions before the statute begins to run, and claim that such a contention is novel and foreclosed by District of Columbia precedent. We disagree. Although the question has not been precisely raised or addressed by the District of Columbia courts, several other jurisdictions have held that knowledge or imputed knowledge of wrongdoing, (although not necessarily legal liability), on the part of defendant is necessary to the accrual of an action under a discovery rule. Especially in the medical field, plaintiffs may lack the expertise to know whether the ill effects they have suffered are a result of someone's wrongdoing, or merely an expected result, or inevitable or unforeseeable risk of their treatment. Since the purpose of a discovery rule is to prevent the accrual of a cause of action before a plaintiff can reasonably be expected to know that he has a cause of action, the statute should not begin to run until he knows, or through the exercise of due diligence, should know, that his injury is the result of someone's wrongdoing. The Michigan Supreme Court in *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (1977), characterized the discovery rule in a drug injury case as the concept that a cause of action does not accrue until

the plaintiff knows or should reasonably know of the causal connection between his injury and the defendant's wrongdoing. Although that case involved only the issue of the discovery of the causal connection between the injury and the drug, the court's language was later used to reject an application of the discovery rule which did not require discovery or a reasonable opportunity to discover, in addition to the adverse reaction to the drug, the wrongful nature of a defendant's conduct. *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 378 A.2d 1138 (1977). Otherwise, the court stated, a plaintiff's cause of action could be barred before he has had a reasonable opportunity to discover that it exists. Similarly, the Washington Supreme Court, in an *en banc* decision, held that a plaintiff who had known since early childhood that her blindness was caused by too much oxygen in the incubator she was placed in as a premature baby was not barred as a matter of law from bringing a suit many years later. Plaintiff claimed to have discovered, within the limitations period, that a school friend with the same injury had brought a lawsuit, after which she contacted an attorney and learned for the first time that she had not needed as much oxygen as had been administered in her infancy, and that her sightlessness could have been prevented. Plaintiff had long been aware of her injury and its cause, but the court held that there was a factual issue as to when she knew or should have known that her blindness was a result of the hospital's breach of duty. The same reasoning was applied to plaintiff's products liability claim against the manufacturer of the incubator. *Ohler v. Tacoma General Hospital*, 92 Wash.2d 507, 598 P.2d 1358 (1979) (*en banc*).

The New Jersey discovery rule involves two key elements, injury and fault. *Lynch v. Rubacky*, 85 N.J. 65, 424 A.2d 1169 (1981). Since medicine is not an exact science, and doctors are not guarantors that no unfavorable consequences will result from their treatments, plaintiffs cannot always be expected to know that adverse consequences from treatment are the result of malpractice. "A claimant should not be penalized because he has had the complicating misfortune of not realizing that he has in fact been victimized by a tortfeasor ...". *Id.*, 424 A.2d at 1175. The Third Circuit applied New Jersey law to a drug products liability case in *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Even though plaintiff knew that there might be a relationship between her thrombophlebitis and defendant's birth control pill, the court denied summary judgment, holding that such knowledge was not identical with knowledge of an actionable claim against the manufacturer for negligent testing or compounding or for failure to warn of known hazards. Plaintiff may have concluded that although defendant adequately tested the drug and warned against all known hazards, its use in the circumstances of her particular condition was inadvisable. Although strong inferences might be drawn as to her state of knowledge, such inferences should be left to the trier of fact.

The Colorado Supreme Court has also held that a medical malpractice claim does not accrue until the plaintiff knows or should know that negligence was involved. This is true whether or not the doctor has led the patient to believe that his actions were proper. *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970). The rule in Arizona malpractice cases is likewise that plaintiff must have discovered defendant's negligence before the statute begins to run. *Abernethy v. Smith*, 17 Ariz.App. 363, 498 P.2d 175 (1972). The Hawaii discovery rule has been formulated as: "the statute does not begin to run until the plaintiff knew or should have known of defendant's negligence." *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967) (Negligent misdiagnosis). In Illinois, a cause of action in a products liability case was held to accrue when plaintiff knew or reasonably should have known of an injury and *also* that the injury was caused by the wrongful acts of another. Plaintiff need not be aware of legal negligence, however. When he discovers wrongful causation, it is his

duty to inquire into whether he has a cause of action. *Nolan v. Johns-Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981). *See also, Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976 (1982). Discovery that the injury was caused by the negligence of the defendant is also required before the statute of limitations begins to run in a medical malpractice action under Iowa law. *Baines v. Blenderman*, 223 N.W.2d 199 (Iowa 1974).

It is true that in some of these case, although the rule is phrased in terms of the discovery of defendant's negligence or wrongdoing, the factual situation involves only discovery that the injury was a result of defendant's conduct or product. Usually, the nature of an injury is such that once the cause is known, it is clear that wrongdoing may have been involved. There is every reason to believe, however, that in accordance with the policy of not foreclosing a cause of action before a plaintiff could reasonably learn of its existence, that those jurisdictions which have phrased the rule in terms of discovery of defendant's wrongful conduct or negligence would hold that a cause of action does not accrue when a plaintiff has discovered the causal connection between his injury and the defendant, but cannot reasonably be expected to know that wrongdoing or actionable conduct was involved. Where there has been a lag between the time the plaintiff discovered that defendant's conduct or product caused his injury and the time when he discovered that wrongdoing might have been involved, the plaintiff has been given the benefit of the later date. Of course, the factfinder may always conclude that plaintiff did or through the exercise of due diligence should have made that discovery sooner than the plaintiff claims was the case.

A few courts have clearly rejected the necessity for the discovery of wrongdoing. The Third Circuit has interpreted Pennsylvania law to require only knowledge of the salient facts concerning the occurrence of the injury and who or what caused it to begin the running of the statute of limitations. At that point it is the plaintiff's duty to investigate whether he has a legal claim. *Da Mato v. Turner & Newall, Ltd.*, 651 F.2d 908 (3rd Cir.1981). *See also Getz v. Bruch*, 400 F.Supp. 1033 (E.D.Pa.1975) (When plaintiff knew the operative facts of a civil rights claim, the mere fact that he did not know he had a cause of action will not serve to toll the statute of limitations). *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704 (3rd Cir. 1981), relied upon by defendants, also applied Pennsylvania law. A West Virginia federal district court has predicted that the West Virginia courts would adopt a discovery rule that extended only to the existence of an injury and its cause, not to knowledge of legal causation. *Pauley v. Combustion Engineering, Inc.*, 528 F.Supp. 759 (S.D.W.Va.1981).

The United States Supreme Court has rejected plaintiff's proffered version of the discovery rule under the Federal Tort Claims Act in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The Court held that a medical malpractice claim accrued when the plaintiff knew both the existence and cause of his injury, and not at the later time when he was discovered that the acts inflicting the injury may have constituted malpractice. The Court put the burden on the plaintiff, once the injury and its cause are known, to determine, by consultation with members of the medical and legal community, whether he has an actionable claim. The Supreme Court noted, however, that its decision was influenced by the fact that the Federal Tort Claims Act constituted a waiver of sovereign immunity, and its statute of limitations a condition of that waiver. Care had to be taken that the waiver not be extended beyond what Congress intended. *Id.*, 444 U.S. at 117–118, 100 S.Ct. at 356–357.[1] As we have seen, several courts have come to the opposite conclusion under state law both before and since the *Kubrick* decision.

---

1. *See also Goff v. United States*, 659 F.2d 560, 561 (5th Cir. 1981) ("It is well established that the time limitations enacted by Congress in statutes which waive governmental immunity are to be strictly construed in favor of the government.")

The question before us, however, is not what would be decided under the Federal Tort Claims Act or under the law of any other jurisdiction, but what would be decided under District of Columbia law. As noted earlier, defendants claim that plaintiff's interpretation of the discovery rule has already been foreclosed by District of Columbia precedent. Specifically, defendants rely upon language in *Grigsby* and *Kelton*. In *Grigsby*, the court found that plaintiff knew or in the exercise of due diligence could have learned the facts giving rise to her cause of action more than three years before she brought it. Since the only facts discussed in the opinion concern the causation of her injury by the defendant's drug, defendants here conclude that only knowledge of injury and causation are required under District of Columbia law. Their contention is bolstered, they argue, by language in the opinion to the effect that the fact that plaintiff was later advised by a personal friend who was a lawyer that she might have a good legal case did not preclude the running of the statute of limitations. We do not read this case as foreclosing discovery of wrongdoing as an element of the discovery rule. Courts generally, as a matter of pragmatic custom, rule only on the questions before them, and the plaintiff in *Grigsby* apparently did not allege that that she was unaware at the time she discovered the connection between the drug and her injury that defendant might have engaged in wrongful conduct. In fact the court found that she discovered no new information within three years of the time she brought the suit. The court did consider the advice of a lawyer that she might have a good case to be a "subjective factor" and not a discovery for statute of limitations purposes. This is quite different, however, from claiming that the discovery of new facts concerning the defendants' misconduct is irrelevant for limitations purposes. The former is a subjective opinion as to whether the facts constitute a good legal claim, the latter a discovery which would be arguably necessary for a plaintiff to realize that her injury was caused by wrongdoing and not simply misfortune. Thus the issue raised here was not before the *Grigsby* court. Another distinguishing factor is that the plaintiff in *Grigsby* was herself a medical doctor, and therefore not laboring under the ignorance concerning technical medical information that would be expected of the ordinary plaintiff. She not only would have been much more likely to know whether her adverse drug reaction was the result of some wrongdoing but her very "truth-seeking" would have been stimulated by her medical expertise. As we have seen in the cases from other jurisdictions described above, many courts have assumed that a person who has reacted adversely to medical treatment or to a drug or other medical device cannot automatically be expected to know that wrongful conduct, and thus a possible cause of action, is involved. Such a person may assume that the result suffered is an unavoidable risk of a treatment, which because of the treatment's general efficacy, is considered acceptable by medical standards, or that it is simply an unforeseeable consequence beyond anyone's control or responsibility. Such an assumption is particularly plausible in our case, where plaintiff suffered an injury allegedly caused by a drug her mother ingested while plaintiff was in her gestational period, and which did not manifest itself for 17 years. It may not have occurred to her that defendants could have foreseen or prevented her injury, or even had the risk been known, that it was not outweighed by the benefit of preventing habitual miscarriage. Plaintiff claims to have learned only in 1980 that DES was inadequately tested and ineffective for its intended purpose.

Defendants also rely on a footnote in the *Kelton* case in which the District of Columbia Court of Appeals "decline[s] to expand the discovery rule any further and reject[s] the appellants' proposal that ... the clock doesn't begin running 'until a complainant has had a reasonable opportunity to discover *all* of the essential elements of a possible cause of action-duty, breach causation, damages-....'" 413 A.2d at 919, citing *Bridgford v. United States*, 550 F.2d

978, 981–82 (4th Cir. 1977). The footnote also cites *United States v. Kubrick.* It is difficult to comprehend the meaning of this footnote, or to treat it as other than *dicta.* The *Kelton* case involved an alleged unconsented tubal ligation. The opinion does not reveal in what manner the plaintiff urged that an expanded discovery rule could have assisted her cause, or exactly what expansion of the discovery rule the court rejected. The *Bridgford* case which was disapproved involved discovery of the full extent of the *injury,* not of causation or wrongdoing. Also, the language in *Kelton* appears to hold that plaintiff should have known of the possibility of wrongdoing based upon the facts available at the time she discovered the injury. Finally, the *Kelton* court refers approvingly to *Burns v. Bell,* which held that the statute did not necessarily begin to run even though the plaintiff was aware of the connection between her injuries and defendant's surgery, because she was not aware that the conduct constituted malpractice.

Accordingly, although the interpretation of the discovery rule which plaintiff urges here has not yet been specifically embraced by the District of Columbia Court of Appeals, it has not been foreclosed by it, and a parallel fact situation has not been placed before it. We believe that the existing District of Columbia discovery rule would be applied to this set of facts in the manner sought by plaintiff.

In general, discovery rules are adopted to avoid the unfairness of interpreting a statute of limitations to accrue when the injury first occurs, if at that time plaintiff does not have enough information to bring suit. This policy is applied to different factual situations as they arise. Where the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing. We believe the District of Columbia courts would follow this progression. While a few courts have forthrightly rejected some or all of these interpretations of the discovery rule, most have at least phrased their discovery rules in a manner that could allow such interpretations should an appropriate case arise. In the majority of cases, injury, causation and fault are apparent at the time of the occurrence. Cases in which one or more of these elements are not evident simultaneously are rare, and become more so as more of these elements are discovered separately. Therefore it is not surprising that many jurisdictions, including the District of Columbia, have not reached the precise issue before us. However, the District of Columbia Court of Appeals has come close to such a holding, and, we believe, would accept the plaintiff's formulation of the rule in an appropriate circumstance. In *Burns v. Bell,* the plaintiff had knowledge of both her injury and its causation for a long period before she suspected malpractice, which suspicion came to her through the fortuity of seeing the results of a similar operation on a friend. The court refused to grant summary judgment based on the statute of limitations. Although the opinion is phrased in terms of plaintiff's discovery of her injury, what she really discovered was not her injury, of which she was well aware, but the possibility that wrongful conduct was involved. Admittedly, *Burns* is distinguishable from the instant case because the plaintiff there was repeatedly reassured by her doctor that nothing had gone amiss and that she would continue to heal. Although plaintiff here does not allege this sort of affirmative misleading within the relationship of trust between doctor and patient, she has averred in her complaint that the actions of the defendants in the withholding from her, her physicians and the Food and Drug Administration of reports, results and information on adverse effects, injuries, contraindications, side effects and other information tending to discredit DES as to its safety and efficacy prevented her from realizing a cause of

action against defendants. We predict that the District of Columbia Court of Appeals would hold that the statute of limitations in this case did not begin to run until plaintiff learned, or in the exercise of due diligence should have learned, that her injuries were the result of some wrongdoing on the part of defendants. This does not mean that plaintiff had to be aware of all the elements of a legal cause of action, of the probability of success in such a lawsuit, or that her knowledge of wrongdoing had to rise to a level of certainty. It merely means that she had to have some awareness, or imputed awareness, that her injuries were the result of some wrongdoing on the part of defendants. An ordinary plaintiff no more has the ability to determine the preventability or foreseeability of adverse effects from a drug than he does to determine whether adverse reactions to medical treatment are an inevitable or unforeseeable risk of the procedure as opposed to a result of malpractice.[2] The same reasoning that has been applied to a malpractice case in this jurisdiction, and to numerous cases elsewhere, should be applied here.

Defendants argue nonetheless that even if knowledge of wrongful conduct is a consideration in the accrual of the claim, through due diligence, plaintiff could have come to the same conclusion she claims to have reached in 1980 as soon as she knew of her injuries and their association with DES, (or when she reached her majority with that knowledge). Defendant states that the basic information on testing that is at her disposal today, the publicly available studies and test reports referred to in the New Drug Applications and in the scientific literature generally, have been available since long before 1973, when plaintiff first became aware of her condition. Defendants further argue that the factual information about defendants' testing procedures for DES has been available since the 1950s, and only opinions and conclusions based upon the facts have changed since then. Defendants attempt to place far too great a burden of due diligence upon the plaintiff. None of the cases discussed here, with the possible exception of *Grigsby*, where the plaintiff was a medical doctor, put a burden on a plaintiff to research technical literature and draw his own conclusions therefrom about the propriety of professional conduct. To the contrary, courts have held that a factual question remains where the plaintiff was alerted to possible wrongdoing by the happenstance of outside events. For example, in *Burns*, the plaintiff suffered scars and pain for several years before the fortuity of seeing the results of a friend's surgery lead her to the conclusion that she had been the victim of malpractice. The plaintiff in *Ohler v. Tacoma General Hospital* had known since she was a small child that her blindness was due to too much oxygen having been administered to her as an infant in an incubator, but did not suspect wrongdoing as opposed to an inevitable result of her treatment for prematurity until she happened to learn that a friend with the same injury had filed suit. In *Lynch v. Rubakcy* and *Knox College v. Celotex*, plaintiffs did not discover the existence of wrongdoing until other experts in the field volunteered their opinions to that effect.

We cannot decide as a matter of law that plaintiff did not exercise due diligence in discovering defendants' alleged wrongdoing. This is a question of fact to be decided by the jury. The earlier availability of relevant information and the fact that, as defendants point out, many DES plaintiffs somehow discovered enough information to file their suits years before this suit was filed, may militate against the plaintiff in the eyes of the jury, but these facts are not sufficient, in the light of existing precedent, to justify summary judgment.

Accordingly, it is this 28th day of July, 1982, hereby

ORDERED, that defendants Eli Lilly and Company, Abbott Laboratories, E. R.

---

**2.** Of course there are cases where a reaction is so unusual and out of proportion to the possible benefits of the drug or medical procedure that a plaintiff will be imputed knowledge of possible wrongdoing as a matter of law as soon as the injury and its cause are known.

**1340**

Squibb & Sons, Inc., and Upjohn Company's motions for summary judgment on the basis of the statute of limitations be, and they hereby are, denied.