Katherine M. **ALBERS** and James G. **Albers**, Plaintiffs,

v.

**ELI LILLY AND COMPANY,** Defendant.

No. 02 C 884.

United States District Court, N.D. Illinois, Eastern Division.

April 15, 2003.

Aaron M. Levine, Aaron M. Levine & Associates, Washington, DC, Jennifer A. Levine, Chicago, for Plaintiff.

John Dames, Mary K. Periolat, Kelley, Drye & Warren, Chicago, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Katherine and James Albers[1] originally filed their six-count Complaint against Eli Lilly and Company ("Lilly") in the United States District Court for the District of Columbia, advancing a number of claims that stemmed from the ingestion of diethylstilbestrol ("DES") by Katherine's mother Mary Murphy while she was pregnant with Katherine some 48 years ago. By mutual consent the action was then transferred to this judicial district, where it was assigned at random to this Court's calendar. Because the District of Columbia treats statute of limitations issues as procedural, and because the procedural law of the transferor forum continues to apply after transfer, the parties have also agreed that this Court should look to District of Columbia law on that subject.

At this point Lilly has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56 on a host of grounds that its counsel sets out at page 1 of its motion:

Specifically, Lilly is entitled to summary judgment because (1) plaintiffs cannot prove that she was exposed to DES in utero; (2) plaintiffs cannot identify Lilly as the manufacturer of the DES to which plaintiff was allegedly exposed, as required under applicable Illinois law; (3) plaintiffs' claims are time-barred; (4) plaintiff cannot prove causation; (5) plaintiffs' strict liability claims are time-barred by the Illinois statute of repose; and (6) plaintiff James Albers cannot maintain a claim for loss of consortium because he was not married to plaintiff at the time of her alleged injury.

In turn, Albers' counsel have begun their responsive legal memorandum in this fashion (Albers Mem. 1):

Without confidence in any single one of their arguments, Defendant proposes four different ones for depriving Ms. Albers of her day in Court, hoping that

---

1. For convenience, those husband-and-wife plaintiffs will be referred to individually by their first names and collectively as "Albers."

one will find its mark. Ms. Albers will thwart each seriatim.[2]

Although Lilly's reply memorandum is not yet due, the head-on confrontation to this point permits its Rule 56 motion to be dealt with now.

As it develops, Albers' extensive submission has identified enough in the way of material (that is, potentially outcome-determinative) facts to cause the rejection of any early summary disposition based on issues (1), (2) and (4) listed by Lilly. But the third issue—the time-bar question—requires substantial discussion and analysis.

■■■ District of Columbia law, as exemplified in *Bussineau v. President and Directors of Georgetown Coll.*, 518 A.2d 423 (D.C.App.1986) and then reconfirmed per curiam in the lengthy opinion in *Diamond v. Davis*, 680 A.2d 364 (D.C.App. 1996), applies a "discovery rule" to determine when the statutory three-year limitations clock begins to tick—a modification of the usual rule that the accrual of a cause of action takes place when the plaintiff sustains injury. *Bussineau*, 518 A.2d at 425 stated the discovery rule requirements in this way:

> We hold that for a cause of action to accrue where the discovery rule is applicable, one must know (or by the exercise of reasonable diligence should know [)] (1) of the injury, (2)[of] its cause in fact and (3) of some evidence of wrongdoing.

*Diamond*, in which the same court was later called upon to decide whether different variants of those requirements were called for in different classes of cases (for example, where fraud and fraudulent concealment were involved), announced the universality of the criteria (680 A.2d at 381):

> In every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence under all the circumstances. Once the plaintiff actually knows, or with the exercise of reasonable diligence would have known of some injury, its cause-in-fact, and some evidence of wrongdoing, then she is bound to file her cause of action within the applicable limitations period, measured from the date of her acquisition of the actual or imputed knowledge.

There is no quarrel on Albers' part as to the satisfaction of the first two components of the rule. To the contrary, as Albers Mem. 10 acknowledges:

> In 1991, Plaintiff Katherine Albers was diagnosed with a T-shaped uterus and was told that this uterine anomaly may have been related to her mother's ingestion of DES when pregnant with her. Plaintiff does not contest therefore that she knew more than three years prior to filing suit that she was injured as a result of her in utero DES exposure.

But Katherine disclaims any reason to suspect any wrongful conduct in that respect (the necessary third component of the rule), stating in part that she never read any newspaper article or magazine or viewed or listened to any television or radio show about DES (Katherine's April 3, 2003 affidavit, Albers App. 23).

---

**2.** [Footnote by this Court] It is of course simply wrong to say that if a party's lawyer believes that the client has multiple grounds for relief, the advancement of those several grounds somehow reflects a lack of confidence in any one of them. Albers' counsel gains nothing by advancing such patently incorrect advocacy—indeed, lawyers often fail to recognize that urging a frivolous position can taint otherwise colorable arguments by creating questions as to counsel's credibility. This Court will not, however, visit any such consequence on Albers or their counsel. As for the disparity between Lilly's enumeration of six arguments and Albers' reference to just "four different ones," this opinion will briefly refer to that subject later.

That poses the question whether Katherine is completely insulated from the application of the third element of the discovery rule test by her asserted lack of information that suggested any wrongdoing. In terms of the absence of any *actual* knowledge on Katherine's part, this Court is required for Rule 56 purposes to take her word for it, even though it is almost necessary for a person to have been marooned on a desert island (or to belong to some variant of the genus Struthio, sharing the ostrich's proverbial head-in-the-sand proclivities) to have been truly unaware of such an open and notorious fact as the many claims of wrongdoing that have been (and continue to be) publicly associated with DES.[3]

Those claims have manifested themselves in the filing of thousands of cases over the years, importantly including one that produced a highly publicized multimillion dollar jury verdict (over $42 million awarded to 11 woman plaintiffs) some three years after Katherine had learned of her problem in 1991,[4] as well as the clear indications of DES causation and of wrongdoing on the part of Lilly and other drug manufacturers that were invariably attached to those claims. Lilly has assembled at its summary judgment Mem. 13–15, and this Court has attached to this opinion, examples of the all-pervasive publicity as to DES, its problems and those of the drug manufacturers, including several

highly publicized instances well after Katherine knew of her problem and had every reason to be alerted to any discussion of DES-related difficulties.

This Court has looked carefully at the operative caselaw in the District of Columbia, not only at *Bussineau* and *Diamond* but also at this year's decision in *Doe v. Medlantic Health Care Group, Inc.,* 814 A.2d 939 (D.C.App.2003).[5] *Doe, id.* at 945 does repeat the proposition that "when accrual actually occurred in a particular case is a question of fact for the factfinder." But it does so in the context that the fact-bound inquiry typically looks at situations in which there are disputed factual issues, such as whether a defendant engaged in misrepresentations (and the nature of such claimed misrepresentations), as well as the reasonableness of a plaintiff's reliance on defendant's conduct and misrepresentations (*id.*). And *Doe, id.* expressly recognizes that "summary judgment on the issue of when accrual occurred may be granted in cases when there is no disputed issue of fact" (cf. also *Jacobsen v. Oliver,* 201 F.Supp.2d 93, 109–11 (D.D.C.2002)). As *Doe, id.* (emphasis added in part) has restated the test set out in *Bussineau* and *Diamond:*

> When the discovery rule applies, a cause of action accrues when the claimant knows or by the exercise of reasonable diligence should know of (1) the injury,

---

**3.** It is worth noting that Katherine is a college graduate, having obtained a bachelor's degree in business (including a course in business law) in 1977.

**4.** Lilly refers to the coverage of that award in both the *Chicago Tribune* and the *Chicago Sun Times* at a time when the Albers were still living in Evanston, as well as to a *Sun Times* article during the same time frame cautioning women about DES-caused problems.

**5.** Albers' attorneys have cited to the decision in *Dawson v. Eli Lilly & Co.,* 543 F.Supp.

1330 (D.D.C.1982), in which he was also counsel for plaintiffs (it is clear that counsel Aaron Levine has pretty much made a career out of lawsuits involving DES-occasioned claims). But Judge Joyce Hens Green's rejection of summary judgment on statute of limitations grounds in *Dawson* is two decades old, and the massive and highly publicized developments that have taken place in the field in the interim render that case's analysis of the due diligence issue very much out of date (to make a bad pun, time-barred?).

(2) its cause in fact, and (3) some evidence of wrongdoing. *See Bussineau v. President and Dirs. of Georgetown College,* 518 A.2d 423, 435 (D.C.1986). "The law of limitations requires only that the plaintiff have *inquiry notice* of the existence of a cause of action." *Hendel v. World Plan Executive Council,* 705 A.2d 656, 661 (D.C.1997). We have explained that a cause of action accrues for statute of limitations purposes when the plaintiff is deemed to be on inquiry notice, "because *if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs,* such an investigation, if conducted, would have led to actual notice." *Diamond v. Davis,* 680 A.2d 364, 372 (D.C. 1996) (per curiam). Thus, inquiry notice is "that notice which a plaintiff would have possessed *after* due investigation." *Id.* (emphasis added)

Reasonableness is of course a wholly objective standard, not a function of the idiosyncrasies of any particular individual. And in those objective terms, it must be concluded that it was unreasonable to do what Katherine did (or more accurately did not do) for years: She engaged in no follow-up inquiry at all into DES, into why it caused the serious deleterious effects that it did, into why in light of those effects it had still been prescribed and into whether there was anything untoward in all of this. Even the most modest of such inquiries (in lay, not professional, terms) would quickly have put Katherine onto information that clearly would have satisfied the third prong of the discovery rule as to actual (not simply imputed) knowledge and would have started the three-year limitations clock ticking.

Indeed, if any jury were to conclude otherwise, its determination would have to be overturned under Rule 50—and it is black letter law that the standards under Rule 50 and Rule 56 are identical

(*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). And what has been said here comports fully with the properly understood District of Columbia caselaw.

Here this Court must treat it as undisputed for Rule 56 purposes—because it is required to accept Katherine's assertion notwithstanding any possible doubts on the subject—that she had no *actual* knowledge of possible fault associated with the DES ingested by her mother. But there is *also* no disputed issue of fact as to the matters adduced by Lilly. From the totality of those undisputed facts, this Court concludes that the exercise of reasonable diligence on Katherine's part required her to inquire long before 1999—which was fully *eight years* after she learned about her malformed uterus, about the fact that DES caused such a condition and about the tragic impact on her child-bearing ability— into matters that would unquestionably have afforded her *actual* knowledge of the third component of the discovery rule (as well as of the first two components) considerably more than three years before she filed suit. No more than a review of the quotations from *Davis* and the other cases referred to here is needed. And that being the case, Lilly's Rule 56 motion based on the untimeliness of this lawsuit is granted.

Just a few words should perhaps be said about the disparity, referred to in n. 2, between Lilly's six asserted grounds for dismissal and Albers' having addressed just four grounds in their response. That response was in fact entirely silent (1) as to the time-barring of Albers' strict liability claims under the Illinois statute of repose and (2) as to James' inability to maintain a claim for loss of consortium. In the absence of anything at all having been submitted on those subjects from Albers'

point of view, those facets of Lilly's motion are also granted.

### Conclusion

There is no genuine issue of material fact as to the untimeliness of this lawsuit in the sense taught by the District of Columbia jurisprudence to which this Court must look on that subject. Lilly is therefore entitled to a judgment as a matter of law. Lilly's motion is granted on limitations grounds—and because one strike suffices for this purpose, both Albers' Complaint and this action are dismissed.