# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2320

KATHERINE M. ALBERS,

*Plaintiff-Appellant,*

v.

ELI LILLY & CO.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 884—**Milton I. Shadur**, *Judge.*

———————

ARGUED DECEMBER 10, 2003—DECIDED JANUARY 6, 2004

———————

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

PER CURIAM. More than a decade after she was diagnosed with a malformed uterus that the physician attributed to her mother's ingestion of DES, Katherine Albers filed this tort action seeking damages from the drug's maker, Eli Lilly & Company. Lilly invoked the statute of limitations, which (the parties agree) is supplied by the local law of the District of Columbia because the suit was filed there and then transferred to Illinois under 28 U.S.C. §1404(a). The District of Columbia's rule has been authoritatively stated:

> In every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable

diligence under all of the circumstances. Once the plaintiff actually knows, or with the exercise of reasonable diligence would have known, of some injury, its cause-in-fact, and some evidence of wrongdoing, then she is bound to file her cause of action within the applicable limitations period, measured from the date of her acquisition of the actual or imputed knowledge.

*Diamond v. Davis*, 680 A.2d 364, 381 (D.C. App. 1996). See also *Bussineau v. Georgetown College*, 518 A.2d 423 (D.C. App. 1986). Albers concedes that she knew both her injury and its cause well outside the period of limitations (three years, see D.C. Code §12-301(8)) but denies that she had "some evidence of wrongdoing" until 1999 or 2000 when she saw in a newspaper an attorney's advertisement about DES. The district court granted summary judgment to Lilly, holding that, even if Albers lacked actual awareness until then, reasonable diligence would have led a person to commence investigation in 1991—the year her doctor diagnosed her as having a "classic T-shaped, DES exposed uterus"—and that even a modest investigation would have turned up "some evidence" that administration of DES to pregnant women could cause defects in their daughters' reproductive systems. 257 F. Supp. 2d 1147 (N.D. Ill. 2003). That made the suit untimely.

On appeal, as in the district court, Albers's principal submission is that until 1999 or 2000 she was ignorant of any potential wrongdoing. We may assume that this is so, but D.C. law establishes an objective rather than a subjective standard. We do not think that any reasonable jury could disagree with the proposition that a person who knows that she has a serious medical condition (here, one that has apparently rendered her infertile) and also knows the condition's cause, would investigate to learn whether wrongful conduct played a role. Albers could have asked her doctor, though apparently she did not. In 1991, information

about DES was readily available in the law reports (litigation about DES has been ongoing, and producing substantial awards, ever since the 1960s) and the press (books as well as newspaper stories). More recently, though still more than three years before suit was filed, medical sites on the Internet have automated such searches. Albers does not dispute the district court's conclusion that even a rudimentary search would have turned up evidence of wrongdoing. Her only contention is that she did not need to search. That line of argument, if adopted, would effectively abolish the D.C. objective rule allowing the imputation of evidence that would have been gathered from a reasonable search and would convert the standard to an entirely subjective one. Like the district judge, we hold that there is no material dispute requiring a jury's resolution. On the undisputed facts, a reasonable person would have commenced an inquiry in 1991 and swiftly would have found some evidence of wrongdoing. Thus the claim accrued in 1991, and this suit is untimely.

One final issue requires some attention. After a draft of this opinion had been written, Albers moved to dismiss the appeal under Fed. R. App. P. 42(b), which provides in part: "An appeal may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court." The parties had not agreed on terms, and Lilly filed a response making it clear that it would not do so. In Lilly's view, the law firm representing Albers, which has a substantial portfolio of DES cases—most of which are filed in the District of Columbia to take advantage of that jurisdiction's favorable limitations rules, even though counsel recognize that they will be transferred for trial or decision elsewhere—is attempting to manipulate the formation of precedent by dismissing those proceedings that may lead to an adverse decision while pursuing others to conclusion. Counsel for Albers filed a response essentially conceding that this is the plan, and that because the oral argument

had not gone well he decided to dismiss the appeal and try again, with a different client, at a different time or in a different court. Counsel contends that Lilly sometimes behaves opportunistically too and that both sides should have this option.

When the parties do not agree on terms, dismissal is discretionary with the court. Doubtless there is a presumption in favor of dismissal, but the procedure is not automatic. See *Hope Clinic v. Ryan*, 249 F.3d 603 (7th Cir. 2001) (en banc); *Margulin v. CHS Acquisition Corp.*, 889 F.2d 122 (7th Cir. 1989). One good reason to exercise discretion against dismissal is to curtail strategic behavior. See, e.g., *American Automobile Manufacturers Association v. Massachusetts Department of Environmental Protection*, 31 F.3d 18 (1st Cir. 1994); *United States v. Washington Department of Fisheries*, 573 F.2d 1117 (9th Cir. 1978). Cf. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994) (judicial decision created with a significant investment of public resources is not a bargaining chip that the parties may elect to have vacated). The case is not moot, because costs abide the outcome and have yet to be determined; in the absence of an agreement, there may be further dispute. (Sanctions also are a possibility, though Lilly has not invoked Fed. R. App. P. 38.) Albers certainly has not promised to pay whatever costs or sanctions Lilly sees fit to demand. We think it best, largely for reasons parallel to those that animated the decision in *U.S. Bancorp*, to carry through so that the investment of public resources already devoted to this litigation will have some return, and an attempt to make the stock of precedent look more favorable than it really is may be foiled.

AFFIRMED

No. 03-2320                                          5

A true Copy:
    Teste:


_____
    *Clerk of the United States Court of*
      *Appeals for the Seventh Circuit*